Michael Kind, Esq.
Nevada Bar No.: 13903
KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com
*Attorneys for Plaintiff Ernie Alaan*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ERNIE ALAAN, <br><br> Plaintiff, <br> v. <br><br> OCWEN LOAN SERVICING, LLC, <br><br> Defendant. | **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

For this Complaint, Plaintiff, ERNIE ALAAN, by undersigned counsel, states as follows:

### **JURISDICTION**

1. Defendant negligently, knowingly, and/or willfully placed automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and

Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA and state law claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

3. This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

5. Plaintiff, ERNIE ALAAN ("Plaintiff" or "Mr. Alaan"), is an adult individual residing in Las Vegas, Nevada.

6. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

7. Defendant OCWEN LOAN SERVICING, LLC ("OCWEN"), is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

8. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

9. OCWEN at all times acted by and through one or more of its debt collectors or other agents (the "Collectors").

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### The Debt

10. Plaintiff allegedly incurred a financial obligation (the "Debt") which was being serviced by GMAC (the "Creditor") for a home mortgage on his residential property located in Las Vegas, Nevada.

11. The Debt arose from services provided by the original mortgage lender which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5). Specifically, a home loan.

12. The Debt was purchased, assigned or transferred to OCWEN for collection, or OCWEN was employed to collect the Debt.

### OCWEN Engages in Illegal Collection Tactics

### FACTS

13. Within the four years prior to filing the instant complaint, Plaintiff received numerous calls from Ocwen attempting to collect the delinquent obligation.

In fact, Ocwen began placing numerous calls on a daily basis to Plaintiff's cellular phone numbers after the loan became delinquent.

14. Each time, Ocwen accused Plaintiff for being late on his payments.

15. When Plaintiff first started receiving the calls from Ocwen, Plaintiff was surprised since he was not late on his payments. Plaintiff informed Ocwen of its error and told Ocwen to stop calling.

16. Several times, Ocwen acknowledged that Plaintiff was, in fact, not late on his payments.

17. Plaintiff repeatedly asked for the calls to stop and specifically instructed Ocwen to "stop calling this number."

18. Ocwen however refused to abide by Plaintiff's demands.

19. Plaintiff continued receiving calls from Ocwen, including approximately three calls every two weeks.

20. This lawsuit results.

## **Plaintiff Suffered Actual Damages**

21. Plaintiff has suffered and continues to suffer actual damages as a result of OCWEN's unlawful conduct.

22. As a direct consequence of Defendant's acts, practices and conduct, Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, and has otherwise been totally annoyed by Defendant's intrusive

and illegal collection calls.  Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time from cell phone use, for which Plaintiff is charged a fee.

## Respondeat Superior Liability

23. The acts and omissions of OCWEN, and the other debt collectors employed as agents by OCWEN who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant OCWEN.

24. The acts and omissions by OCWEN and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by OCWEN in collecting consumer debts.

25. By committing these acts and omissions against Plaintiff, OCWEN and these other debt collectors were motivated to benefit their principal, Defendant OCWEN.

26. OCWEN is therefore liable to Plaintiff through the Doctrine of Respondent Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Nevada tort law, in their attempts to collect a debt from Plaintiff.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

27. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

28. The TCPA regulates, among other things, the use of automated telephone dialing systems.

29. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

30. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

31. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

32. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

33. On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

34. Further, consumers (like Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

35. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

36. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

---

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

37. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id.* at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

38. Within the four years prior to filing the instant complaint, Plaintiff received numerous calls from Defendant.

39. Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1) and/or an artificial voice or prerecorded messages.

40. Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "8965" via an ATDS as defined by 47 U.S.C. § 227(a)(1), or an artificial voice or prerecorded messages, as prohibited by 47 U.S.C. § 227(b)(1)(A).

41. Within the years prior to filing the instant complaint (as further discussed above), Plaintiff instructed Defendant or its agent(s) not to call Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

42. Moreover, Defendant did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

43. However, Defendant placed calls to Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

44. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

45. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

46. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

47. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

48. Plaintiff suffered actual harm and loss, since the unwanted calls depleted Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, resulting from Defendant's unwanted phone calls to Plaintiff's cell phone.

49. Plaintiff also suffered from an invasion of a legally protected interest by placing calls to Plaintiff's personal phone line when Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers

from this precise behavior.

50. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

51. Plaintiff was also personally affected, since Plaintiff felt that Plaintiff's privacy had been invaded when Defendant placed calls to Plaintiff's phone line without any consent to do so.

52. The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

**Negligent Violations of the
Telephone Consumer Protection Act,
(47.S.C. § 227, *et seq*.)**

53. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

54. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

55. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

56. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of

the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, (47.S.C. § 227, *et seq.*)

58. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

59. Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

60. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

61. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

62. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

### Defendant's Violations of Nevada's
### Deceptive Trade Practices Act
### (NRS 598.0918)

63. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

64. "Solicitation" means "the act of . . . seeking to obtain" something – in this case money. *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

65. Here, Defendant solicited Plaintiff to seek or obtain money from Plaintiff.

66. On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature. AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

67. As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers." *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

68. Further, AB 337 was specifically intended to apply to companies (like Defendant) using "automatic calling" or automated dialing systems. As Ms.

Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do." *Id*. at page 4093.

69. In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to:

   a. Repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;
   b. Solicit a person by telephone at his or her residence between 8 p.m. and 9 a.m.

70. On numerous occasions Defendant violated NRS 598.0918(3) by placing calls to Plaintiff's telephone before 9:00 a.m. and after 8:00 p.m. Specifically, Defendant placed calls to Plaintiff's cell phone before 9:00 a.m. and after 8:00 p.m. prior to filing the instant complaint.

71. Defendant repeatedly and continuously placed telephone calls to Plaintiff's residential phone (which is also Plaintiff's cellular phone) to solicit money from Plaintiff in a manner that would be considered annoying, abusive or harassing by a reasonable person.

72. Specifically, Defendant placed calls to Plaintiff's residential cell phone even after Plaintiff demanded Defendant cease calls to Plaintiff as more fully set forth above. Such conduct is unquestionably harassing and annoying.

73. As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, Plaintiff suffered and continues to suffer from anger,

anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.  Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which Plaintiff is charged a fee.

74. Defendant therefore violated NRS 598.0918(2).

75. Defendant therefore also violated NRS 598.0923(4) when it used coercion, duress or intimidation in a transaction.

76. Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and Plaintiff is entitled to relief under NRS 41.600.

## COUNT IV

### Intrusion Upon Seclusion

77. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. Plaintiffs had an objectively reasonable expectation of privacy at home, at work, and when conducting his daily affairs, to expect that they would not be subject to numerous unwanted phone calls for months at a time. Defendant's unrelenting campaign of harassment by placing repeated and continuous phone calls intruded into this reasonable expectation of privacy.

79. The frequency and cumulative volume of Defendant's phone calls

were received in a manner that would be highly offensive to a reasonable person in the same or similar circumstances.

80. Plaintiffs could not escape these calls because Ocwen would call in at all times. Ocwen would also make these calls from different area codes and numbers, so Plaintiffs did not know who was calling.

81. Plaintiff was harmed by Defendant's conduct.

82. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

83. Defendant intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting a debt, and thereby invading, and intruding upon Plaintiff's rights to privacy.

84. As this conduct was carried out by Defendant in an oppressive, malicious, despicable, gross and wantonly negligent manner, Defendant's conduct demonstrates Defendant's conscious disregard for the rights and safety of Plaintiff or his family. As such, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant awarding Plaintiff:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. Actual damages including, but not limited to, the emotional distress Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

5. Punitive damages;

6. An award of attorney's fees and costs to counsel for Plaintiff; and

7. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: May 25, 2018

Respectfully submitted,
By:/s/ Michael Kind.

Attorney for Plaintiff
*ERNIE ALAAN*